**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Linda Lebourdais,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-23-00639-PHX-DJH<br><br>**ORDER** |

Plaintiff Linda Lebourdais ("Plaintiff") seeks this Court's review of the Social Security Administration ("SSA") Commissioner's (the "Commissioner") denial of her application for Social Security Disability Insurance ("SSDI") benefits. (Doc. 18 at 1). The matter is fully briefed. (Docs. 20–21). Upon review of the briefs and the Administrative Record (Docs. 12–15, "AR"), the Court reverses and remands for the following reasons.

**I. Background**

Plaintiff filed for SSDI benefits and alleged a disability onset date of August 4, 2017. (AR at 20). These claims were denied by the Commissioner, but the appeals council remanded that decision back to the Commissioner. (*Id.*) The remand order instructed the ALJ to:

> further evaluate the severity of the claimant's mental impairments, further evaluate the claimant's alleged symptoms and provide rationale, further, if necessary and available, obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's impairments, give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references

to evidence of record in support of the assessed limitations, if warranted by the expanded record, obtain evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferable with very little, if any, vocational adjustment to other occupations under the guidelines in Social Security Ruling 82-41and if the claimant is found disabled, conduct the further proceedings required to determine whether substance use disorder is a contributing factors material to the finding of disability.

(*Id*.)  Upon remand, the Administrative Law Judge (the "ALJ") held a telephonic hearing to determine whether Plaintiff was disabled.  (*Id*.)  The ALJ concluded that Plaintiff was not disabled under the Social Security Act ("the Act").  (*Id*. at 34). To reach this conclusion, the ALJ utilized a five-step process developed by the SSA for determining whether an individual is disabled.

**A.    The ALJ's Five-Step Process**

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The ALJ follows a five-step process[1] to determine whether a claimant is disabled for purposes of the Social Security Act ("the Act"):

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii).  If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii).  If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.*  If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity"[2] in determining whether the claimant can

---

[1] The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*, 180 F.3d at 1098.

[2] A claimant's "residual functional capacity" is defined as their ability to do physical and

- 2 -

still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); *see also* 20 C.F.R. § 404.1520(a)–(g). If the ALJ determines no such work is available, the claimant is disabled. *Id*. § 404.1520(a)(4)(v).

At the first and second steps of the five-step inquiry, the ALJ concluded that (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability, and (2) that she had several severe impairments, including: cervical degenerative disc disease, lumbar degenerative disc disease, status-post left total knee arthroplasty, status-post right total knee arthroplasty, status-post gastrectomy and resection and obesity. (AR at 23). The ALJ also found that these impairments "significantly limit the ability to perform basic work activities." (*Id*.) The ALJ also noted the presence of other disorders, including: major depressive disorder, post-traumatic stress disorder (PTSD), and anxiety disorder. (*Id*.) The ALJ found, however, that these disorders are non-severe impairments because they do not result in any limitations of functioning—specifically, when not under the influence of substance use. (*Id*.)

At the third step, the ALJ concluded that, including the claimant's substance use, the severity of the claimant's impairments met the criteria of section 12.04 of 20 CFR Part 404, Subpart P, Appendix 1. (*Id*. at 25). The ALJ also found, however, that Plaintiff would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 if she stopped her substance use. (Id. at 28).

At step four, the ALJ concluded that Plaintiff had the following residual functional capacity ("RFC"):

> if the [Plaintiff] stopped the substance use, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with the following additional limitations: The claimant can lift and

---

mental work activities on a sustained basis despite limitations from their impairments. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

> carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk for 6 hours in an 8-hour day. The claimant can sit for 6 hours in an 8-hour day. The claimant can occasionally climb ramps and stairs but never climb ladders or scaffolds. The claimant can frequently balance and stoop, and occasionally kneel, crouch and crawl. The claimant can occasionally reach overhead with both upper extremities. The claimant must avoid concentrated exposure to extreme temperatures, humidity, fumes, odors, dusts, gases and hazards.

(*Id*. at 29). To reach its RFC conclusion, the ALJ relied on testimony from the Plaintiff (*Id*. at 29–32) as well as relevant medical opinions and prior administrative medical findings. (*Id*. at 32–33).

Finally, at step five, the ALJ found that Plaintiff would be able to perform past relevant work as a customer service representative if she stopped her substance use. (AR at 33). The ALJ also noted that this past relevant work does not require the performance of work-related activities precluded by her RFC if she stops her substance use. (*Id*.) Based on this five-step evaluation process, the ALJ ultimately concluded that:

> The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use (20 CFR 404.1520(g) and 404.1535). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(*Id*. at 34). Now, the Court must determine whether the ALJ's decision was erroneous.

**II.  Standard of Review**

In determining whether to reverse a decision by an ALJ, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by "substantial evidence" or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the

record as a whole. *Id*. Substantial evidence is the type of evidence that would suffice, at trial, to avoid a directed verdict. *See Nat'l Labor Relations Bd. v. Columbian Enameling & Stamping Co*., 306 U.S. 292, 300 (1939).

To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Orn*, 495 F.3d at 630. The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.* at 954 (citations omitted).

### III.    Discussion

Plaintiff argues that the ALJ erred by (1) failing to find Plaintiff suffers from severe mental impairments and to incorporate resulting limitations in the assigned RFC; (2) failing to adequately assess the medical opinion evidence from Dr. Theresa Costelas and Dr. Robert Mastikian; and (3) failing to provide clear and convincing reasons for discrediting Plaintiff's symptom testimony. (Doc. 18 at 3). The Court will address each argument in turn.

#### A.    Plaintiff's Mental Impairments

Plaintiff first argues that the ALJ's decision contains harmful error in its failure to find claimant's impairments of major depressive disorder, post-traumatic stress disorder ("PTSD") and anxiety disorder to be severe medical impairments pursuant to 20 C.F.R. § 404.1520(a)(4)(ii) as this finding is not sufficiently supported by evidence of record. (Doc. 18 at 4). Plaintiff specifically argues that the ALJ failed to consider outpatient

psychiatric treatment notes from September of 2020 until April of 2022.  (*Id*. at 5). Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff's drug abuse and alcoholism were material to her disability, and that without drug abuse or alcoholism her mental impairments would not be severe.  (Doc. 20 at 7).

In assessing mental abilities specifically, the ALJ "must consider the nature and extent of the claimant's mental limitations and restrictions to determine the claimant's RFC 'for work activity on a regular and continuing basis.' " *Michele M*., 2020 WL 1450442, at *6 (quoting 20 C.F.R. §§ 404.1545(c), 416.945(c)).  A claimant's "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [his or her] ability to do past work and other work." *Id*.  The consideration of " 'the limiting effects of all impairments' does not necessarily require the inclusion of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work." *Id*. (quoting *Medlock v. Colvin*, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016).  If a claimant has more than one impairment, the ALJ must consider all medically determinable impairments, including "medically determinable impairments that are not 'severe.' " 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities.  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  The Step Two inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996).  However, an overly stringent application of the severity requirement violates the Act by denying benefits to claimants who meet the statutory definition of disabled.  *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994).  If the plaintiff meets his burden of demonstrating he suffers from an impairment affecting his ability to perform basic work activities, "the ALJ must find that the impairment is 'severe' and move to the next step in the SSA's five-step process." *Edlund v. Massanari*, 253 F.3d

1152, 1160 (9th Cir. 2001) (emphasis in original).

Furthermore, as Defendant notes, a "finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (quoting *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)). Under 42 U.S.C. § 423(d)(2)(C), a claimant cannot receive disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." "The 'key factor . . . in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability' is whether an individual would still be found disabled if [he] stopped using alcohol or drugs." *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir.1998) (citation omitted).

Below, the ALJ found that there is evidence that Plaintiff suffers from depression, anxiety and PTSD. (AR at 23). He concluded that these conditions are non-severe impairments because they do not result in any limitations of functioning—specifically, when not under the influence of substance use. (*Id*.) The ALJ reasoned that, when Plaintiff was not under the influence of substance use, there were "mild limitations with understanding, remembering or applying information, mild limitations with interacting with others, mild limitations with concentrating, persisting or maintaining pace and mild limitations with adapting or managing oneself." (*Id*. at 23–24). The ALJ also noted that "there is very little mental health treatment in the medical evidence of record." (*Id*. at 24).

To reach his conclusions, the ALJ relied upon the evidence in the record. (*Id*.) The ALJ noted that, when she is not using drugs and alcohol, the record indicates Plaintiff's mood is stable while on medications. (*Id*.) He noted that Plaintiff has a history of noncompliance for her mental health impairments. (*Id*.) The ALJ noted that she was assessed with a Global Assessment of Functioning ("GAF") score of 60 at Lifewell Behavioral Wellness, which indicates moderate symptoms. (*Id*.) The ALJ further noted Plaintiff was treated with Seroquel for mood stability, insomnia and for anxiety, which she "prompted being very efficacious with this combination of medication stabilization." (*Id*.)

The ALJ stated that this treatment showed subjective improvement as well as improvement on mental status examination. (*Id*.) The ALJ noted that, while in treatment and abstaining from drugs, her mental status exams revealed largely normal findings and that the evidence suggested the claimant was doing much better from a mental health standpoint when she abstained from substance use. (*Id*.) From this evidence, the ALJ found that Plaintiff's mental impairments are nonsevere when she abstains from substance use. (*Id*.)

Indeed, as Plaintiff argues, the ALJ failed to cite to or consider the outpatient psychiatric treatment notes from September through April of 2022 in reaching his decision on Plaintiff's mental impairments. (*Compare* AR 3188-3659 *with* AR 23–25). These records indicate, in pertinent part, that Plaintiff attempted to take her own life on January 9, 2022, and was admitted to Banner Del Webb. (AR at 3273). Plaintiff's treating psychiatrist, Dr. Theresa Costales, noted that she last treated Plaintiff on November 17, 2021, and that she was stable and doing well. (*Id*.) She also noted that a decrease in medication change was made as she was not taking gabapentin at bedtime, which had been helping Plaintiff to sleep well at night. (*Id*.) Dr. Costales indicated that Plaintiff has never had a manic episode before, and that "it is highly unlikely that she had one that resolved in just a few days on low dose Depakote while she was in the hospital." (*Id*. at 3274).

Dr. Costales saw Plaintiff on January 19, 2022, after her suicide attempt, and noted that she "appeared to be at her baseline, presenting as calm, cooperative, pleasant and well-related. There were no signs of dysphoria, mania/hypomania or psychosis elicited. She explained that she had started trauma work with her therapist at AZ Center for Change, and it brought up overwhelming memories of her trauma." (*Id*.) These records also indicate that Plaintiff was maintaining sobriety. (*Id*. at 3352 (November of 2021); 3375 (September of 2021)). She also reported in an annual behavioral health update that she had not drank alcohol since 2020 and had not had narcotics since 2012. (AR at 3389). She also reported that "she is aware of the medications she takes and feels as though they are working because she is not experiencing any adverse side effects." (*Id*.)

Indeed, the ALJ did not cite to these records, as Plaintiff notes. (Doc. 18 at 5). The

Court cannot discern whether they bolster or undermine the ALJs decision. On one hand, the records reflect that she had a manic episode where she attempted to take her own life by swallowing mirtazapine and tizanidine. (AR at 3083). They also reflect that she had not drank alcohol since 2020 and had not had narcotics since 2012. (Doc.14-8 at 25). On the other hand, these records indicate that Plaintiff was at her "baseline" when seen by Dr. Costales—presenting as calm, cooperative, pleasant and well-related and having no signs of dysphoria, mania/hypomania or psychosis elicited. (AR at 3231 (April of 2022); 3274 (January of 2022); 3351 (November of 2021)). However, while being seen inpatient at Banner, Dr. Richard Ulrich noted that she was "emotionally labile, tearful and angry, agitated, screaming and yelling on the unit, pacing and banging doors." (*Id*. at 3083).

The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility—not this Court. *Andrews*, 53 F.3d at 1039. It is also the ALJ's duty to "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter*, 806 F.3d at 492. This Court cannot reweigh the evidence which the ALJ relied upon to reach its decision, and certainly, it cannot weigh evidence for the first time on appeal. *Thomas*, 278 F.3d at 954. It is unclear how the ALJ would weigh this conflicting evidence because the ALJ did not discuss it in his conclusion on Plaintiff's alleged mental health impairments. (*See* AR at 23–25). Therefore, the ALJ has not sufficiently set forth the reasoning behind its decisions in a way that allows for meaningful review. *See Brown-Hunter*, 806 F.3d at 492. So, the Court cannot discern whether the ALJ's decision is based on substantial evidence. *See id*.

Furthermore, "[t]he ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation omitted). This failure to consider Plaintiff's evidence of mental impairments and treatment from 2018 through the date of decision is not harmless because it is not clear from the record that this evidence is "inconsequential." *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (error is harmless if it is "clear from the record that [the] error was inconsequential to the

ultimate nondisability determination" (internal quotation marks omitted)).

Defendant notes that this evidence is duplicative and argues that the ALJ need not discuss it. (Doc. 20 at 16). Indeed, as Defendant notes, "an ALJ 'need not discuss all evidence presented to her. Rather, [an ALJ] must explain why 'significant probative evidence has been rejected.' " *See Wischmann v. Kijakazi*, 68 F.4th 498, 505 (9th Cir. 2023) (quoting *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). As the Court has stated, it cannot discern whether these records bolster or undermine the ALJs decision without more, i.e., whether it is "significantly probative." *Id*. The ALJ has a duty to address such a conflict. *See id; Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Because, as Plaintiff argues, the ALJ erred in failing to consider the outpatient psychiatric treatment notes from September through April of 2022 (*compare* AR 3188-3659 *with* AR 23–25), submitted after the Appeals Council remand order, the Court must reverse the ALJ's decision and remand this matter to the Commissioner. On remand, the ALJ shall conduct a new hearing to consider all of the evidence in making a disability determination and set forth the reasoning behind its decisions in a way that allows for meaningful review. *See Brown-Hunter*, 806 F.3d at 492.

Accordingly,

**IT IS ORDERED** that the Administrative Law Judge's June 27, 2022, decision (AR at 20–34) is **reversed in part and remanded** to the Commissioner for further proceedings consistent with the Court's Order. The Clerk of Court is kindly directed to enter judgment in Plaintiff's favor and terminate this action.

Dated this 30th day of September, 2024.

Honorable Diane J. Humetewa
United States District Judge